Oscar Bloom, Respondent, *v.* Selglo Corporation, Appellant.

First Department, December 20, 1948.

*Charles M. Joseph* for appellant.

*Moses S. Finesilver* of counsel (*Menahem Stim* with him on the brief; *Powers Kaplan & Berger,* attorneys), for respondent.

Van Voorhis, J. The defendant appeals from a judgment for $3,545.16 and costs, entered on a verdict for plaintiff under the second cause of action for wrongful discharge.

During the year prior to September, 1946, plaintiff worked for defendant at will as a salesman on a commission basis. The first cause of action alleges, in effect, that it was agreed that his commissions should be at the rate of 7½% whereas he was paid at the rate of 5% for that period. The jury found for

the defendant on that cause of action, which has been dismissed. No appeal is taken from that part of the judgment.

The second cause of action alleges that at the end of the said year, and on or about September 2, 1946, the defendant entered into an oral agreement with the plaintiff whereby it employed him as sales manager for a term of one year from that date at a salary of $6,500 payable in weekly installments of $125 each. Plaintiff's connection with the defendant terminated on December 13, 1946, which was three and one-half months after the commencement of his alleged one-year term of employment. According to defendant's version, plaintiff's employment as sales manager was not for a year but at will, and plaintiff soon became dissatisfied with his new position for the reason that he feared losing the contact with his customers which he had built up as a personal asset while a salesman, and stated in November, 1946, that he preferred to return to the position of salesman which he had occupied during the year prior to September, 1946. The principal officer of the defendant who dealt with plaintiff, and through whom plaintiff contends his contract was made, Sidney J. Gluck, testified that after the said conversation in November he himself acted as sales manager and that plaintiff resumed the work and status of salesman until December 13th. Plaintiff continued to be paid, however, at a straight salary of $125 a week. On the latter date Sidney J. Gluck stated that he told plaintiff that although he had been employed at $125 a week as sales manager, he should be restored to a commission basis due to the fact that he had again become a salesman. They had an argument about this, Sidney J. Gluck stated, and Gluck offered him $100 a week as a drawing account against commissions, which he refused, and thus the business relationship ended.

Plaintiff testified that in November Sidney J. Gluck told him that he wanted plaintiff to go back to his old status of salesman, but that plaintiff objected to doing so, and that on December 13, 1946, he was told to quit unless he would go back to acting as a salesman on a commission basis, and that this constituted a breach by defendant of his contract for a year as sales manager.

The contested issue under the second cause of action is whether there ever was an agreement of hiring as sales manager for a year, and the question on this appeal relates to the exclusion of an exhibit which bears upon that question. It is necessary, therefore, to review briefly the evidence relating to it. There is no disagreement concerning the rate of plaintiff's compensation, nor that he was hired to act as sales manager at the begin-

ning of September, 1946. The controversy relates exclusively to the duration of the employment. Plaintiff testified:

"Q. You are sure one year was mentioned? A. Yes.

"Q. One year, no more, no less? A. For one year.

"Q. I say, exactly a year, not more? A. Well, generally, every contract is for a year and that is what was stated, one year."

Sidney J. Gluck testified that the subject of a term of employment was mentioned, and that the conversation was as follows: "I said, ' Well, if you are going to be sales manager you want to have a guarantee as to how long you might make $125, and what period of time the business would be expected to grow.' So, we examined the way the business goes, and actually, if we did make it for a year — the word ' year ' did come up — if we did make it for one year I said that would come out September 1st again and we begin to sell in June for the fall. The line is made up in May and June. That is called the back-to-school fall line and it is actually shown in June. As a matter of fact, that year it would have been June 10th because there is what they call a Corset & Brassiere Show when all the companies show their fall line. Therefore, I said if we show in June then the selling would take place August, September, October and some in November; it would come right in the middle, so I think we will guarantee the $125 right to the end of 1946. I stated the period would actually come to about a year and four months. That would be confined to the seasonal character of the business."

It is undisputed that immediately after this conversation, which must have occurred not later than August 29th, since Sidney J. Gluck left for Europe on that date, he dictated a written memorandum purporting to embody the transaction which it was planned that both of them would sign. That is the paper, described as defendant's Exhibit D for identification, which the defendant-appellant contends was erroneously excluded.

When first shown this document on the witness stand, plaintiff testified that he believed that he had seen it before and that he thought it was the contract that was dictated by Sidney J. Gluck before he left for Europe. At another point plaintiff testified that he saw the copies in triplicate himself and put them in Sidney J. Gluck's drawer, and requested Sidney J. Gluck to sign before sailing. Plaintiff later qualified this testimony by stating that he was not sure whether this was the same form of agreement which is Exhibit D for identification.

The reason stated by the trial court for excluding this exhibit is that "the only thing that would make this competent would be the testimony that the plaintiff heard the dictation and afterwards saw the paper again; that that was what the two of them talked about. That would make it competent. But, here is a paper that you offer which concededly this plaintiff never saw at all until possibly after it was written."

The admissibility of this writing did not depend, however, entirely upon the testimony of the plaintiff. The witness Albert Gluck, also an officer of the defendant corporation, took over the transaction when his brother Sidney went to Europe. Albert testified that he was given Exhibit D for identification by Sidney J. Gluck before his departure, and that, at the end of August or beginning of September 1946, "I showed this to Mr. Bloom and asked him to sign it.

"Q. What did you tell him and what did he tell you, and when did you do that? A. It must have been a day or two after my brother Sidney had left for Europe.

"Q. Tell us what you told him and what he told you? A. I told him —

"Q. This is Bloom? A. Yes. I told Bloom that I had this memo of the agreement that my brother and he had come to and would he sign it. He said he had been thinking it over and didn't want to sign it explaining that he wanted to talk with Sidney again about it before he signed it. * * * * ·

"Q. Did Bloom look at this paper when you showed it to him? A. Yes, he did." Plaintiff testified that on Sidney's return from Europe he neglected to sign this agreement.

This paper was more than a self-serving declaration. The jury could have found that it had substantial probative force to establish that the minds of the parties never met upon any definite term for the duration of the employment of the plaintiff as sales manager by the defendant. It was a proposed written contract, informal in nature, which the jury might have found that the parties caused to be prepared for signature, and considered. They did not sign it, according to defendant's theory, for the reason that they were unable to agree on the length of the term. It is undisputed that this writing accurately described the employment arrangement in all respects except as to the length of time the employment was to last. A foundation was established for its admissibility by the testimony of Albert Gluck that plaintiff examined it, and stated that he would not sign it for the reason that he had changed his mind; its

reception in evidence did not depend upon any concession by the plaintiff on the witness stand. If the parties had agreed upon a year instead of the sixteen months expressed in the writing, it would have been a simple matter to have modified the writing so as to make it run for a year instead. The document, if admitted, would have tended to support the defendant's position that, although the duration of the term was discussed, the minds of the parties failed to meet upon any particular length of time, with the consequence that the employment became one at will. It was part of what they did in reaching, or in failing to reach an agreement on the term of his service as sales manager. The following cases lend support to that view: (*Eager* v. *Crawford,* 76 N. Y. 97; *Wolf* v. *Di Lorenzo,* 22 Misc. 323). We think that the defendant was entitled to have the jury examine this memorandum, and there should be a new trial since we are unable to say whether it would have changed the result.

The judgment appealed from should be reversed and a new trial granted, with costs to appellant to abide the event.

PECK, P. J., GLENNON, DORE and CALLAHAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.